RACHEL E. KAUFMAN (Cal. Bar No. 259353)
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorney for Plaintiff and the Proposed
Classes*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY FABRICANT, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>UNITED ENROLLMENT SERVICES LLC and NEO INSURANCE SOLUTIONS LLC,<br><br>     Defendants. | **Case No.**<br><br>**COMPLAINT FOR:**<br><br> 1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)**<br> 2. **VIOLATIONS OF THE FLORIDA TELEPHONE SOLICITATION ACT, FLA. STAT. § 501.059**<br><br>**Class Action**<br><br>**DEMAND FOR JURY TRIAL** |

   Plaintiff Terry Fabricant ("Plaintiff" or "Mr. Fabricant") brings this Class Action Complaint and Demand for Jury Trial against United Enrollment Services LLC who makes telemarketing calls for Neo Insurance Solutions LLC to stop them from violating the Telephone Consumer Protection Act ("TCPA") by making

telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). The Plaintiff also alleges that Defendants violated the Florida Telephone Solicitation Act ("FTSA") by making automated calls from Florida.

Plaintiff seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff Terry Fabricant is an individual residing in this District.

2.      Defendant United Enrollment Services LLC is a Florida limited liability company that conducts business in this District.

3.      Defendant Neo Insurance Solutions LLC is a Florida limited liability company that conducts business in this District.

## JURISDICTION AND VENUE

4.      The Court has federal question jurisdiction because this matter arises under the TCPA, a federal statute. The Court also has supplemental jurisdiction over the FTSA claim because the FTSA claim relates to the same telemarketing campaign as the TCPA claim.

5.      This Court has personal jurisdiction over Defendants because the calls to the Plaintiff were made into and received in this District.

6.      The venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims were directed to this District, i.e. the Defendants made the calls at issue into this District.

## BACKGROUND

The Florida Telephone Solicitations Act

7.      The FTSA, Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

8.      It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." This includes to a number listed on the National Do Not Call Registry. Fla. Stat. § 501.059(4).

9.      It is also a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

10.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

11.     Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

The National Do Not Call Registry

12.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

13.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMMON ALLEGATIONS**

15.    Defendant United Enrollment Services is in the business of offering insurance services including acting as an agent with insurance companies to offer their services.

16.    That includes a relationship with Neo Insurance Solutions.

17.    To promote those insurance services, Defendant Neo Insurance makes telemarketing calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do Not Call Registry and Florida's no sales solicitation list.

**PLAINTIFF FABRICANT'S ALLEGATIONS**

18.    Plaintiff Fabricant is the subscriber and the sole user of the cellular phone number 818-xxx-1818.

19.    Plaintiff Fabricant registered his phone number on the Do Not Call Registry more than 30 days prior to receiving the calls at issue.

20.    That is a residential number that the Plaintiff uses for personal calls and is not associated with a business.

21.    The Plaintiff has never consented to receive telemarketing calls from the Defendant.

22.     Despite that, United Enrollment Services sent at least six texts to the Plaintiff.

23.     This includes text messages on December 22, 2022, January 4, 12, 19, 26 and 31, 2023.

24.     The text messages are below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19      25.    The calls were sent with an automated system for the selection or

20  dialing of telephone numbers as the texts were generic and included an ability to

21

22  send an automated response to unsubscribe.

23      26.    It would be inefficient and unlikely for a text message sender to do this

24

25  if the text sent was being sent by an individual as opposed to through an *en masse*

26

27  platform.

28

27.    The unauthorized telephonic sales calls that Plaintiff received from Defendants, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and occupied and otherwise disturbed the use and enjoyment of his phone.

28.    A call back to the number advertised on the text messages to call back resulted in speaking with United Enrollment.

29.    United Enrollment offered Neo Insurance Solutions services.

30.    To solicit an accurate quote for Neo Insurance Solutions services in order to sell an insurance policy, United Enrollment asked a series of questions.

31.    These included the call recipient's age, existing insurance coverage and the type of coverage desired.

32.    United Enrollment then made an offer for a Neo Insurance Solutions insurance policy that included a $99 one-time enrollment fee.

33.    Seeking redress for these injuries, Plaintiff Fabricant, on behalf of himself and Classes of similarly situated individuals, brings suit under the FTSA and TCPA.

**NEO INSURANCE SOLUTIONS LIABILITY FOR
UNITED ENROLLMENT'S ACTIONS**

34.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

35.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

36.     The FCC has instructed that sellers such as Neo Insurance Solutions may not avoid liability by outsourcing telemarketing to third parties, such as United Enrollment:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

37.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common

law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

38.   Neo Insurance Solutions is liable for telemarketing calls placed by United Enrollment to generate customers for Neo Insurance Solutions.

39.   Neo Insurance Solutions controls the day-to-day activities of United Enrollment telemarketing for Neo Insurance Solutions.

40.   Neo Insurance Solutions restricts the geographic footprint into which United Enrollment can cause calls to be made.

41.   Neo Insurance Solutions provided the specific criteria for the leads United Enrollment generated and required them to adhere to those criteria.

42.   Neo Insurance Solutions knew or reasonably should have known that United Enrollment was violating the TCPA on Neo Insurance Solutions's behalf but Neo Insurance Solutions failed to take effective steps within its power to cause them to stop.

43.   United Enrollment has been named as a defendant in lawsuits alleging that they violated the TCPA and has been involved in more cases as a third-party vendor responsible for calls that violated the TCPA.

44.   A reasonable seller whose telemarketers are the targets of repeated telemarketing complaints would and should investigate to ensure that its telemarketing complies with the TCPA.

45.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CLASS ALLEGATIONS

46.     Pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), the Plaintiff brings this action on behalf of the following putative classes (the "Class"):

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S. (1) who received a telephonic sales call to or from Florida regarding Neo Insurance Solutions goods and/or services (2) using the same equipment or type of equipment utilized to call Plaintiff (3) from July 1, 2021 through the date of trial.

> **Telephone Consumer Protection Act Do Not Call Registry Class:** All persons in the U.S. (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days (2) but who received more than one telemarketing call from or on behalf of Neo Insurance Solutions (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

47.     Defendants and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

48.     Plaintiff brings all claims in this action individually and on behalf of Class Members against Defendants.

### Numerosity

49.     Members of the Class are so numerous that their individual joinder is impracticable.

50.     On information and belief, based on the technology used to call Plaintiff, which is used to make calls *en masse*, Members of the Class number in the thousands.

51.     The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

52.     Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

### Commonality

53.     Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.

54.     Common legal and factual questions include, but are not limited to, whether Defendants have violated the Telephone Consumer Protection Act or

Florida Telephone Solicitation Act, and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

**Typicality**

55.     The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, received unsolicited telephonic sales calls from the Defendants without giving them his consent to receive such calls.

**Adequacy of Representation**

56.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.

57.     The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority**

58.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

59.     Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendant's liability.

60.     Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system.  This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

61.     Individualized litigation also presents a potential for inconsistent or contradictory judgments.

62.     In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

63.     Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation of the Florida Telephone Solicitation Act,
### Fla. Stat. § 501.059
### On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class

64.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

66.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or

dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

67.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

68.    Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

69.    In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

70.    Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

71.    As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a

minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## COUNT II

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

72.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

73.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

74.     The Defendants' violations were negligent, willful, or knowing.

75.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

76.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from making telemarketing calls to

numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

Injunctive relief prohibiting Defendants from using an autodialer to advertise their goods or services;

A judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation; and

An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this 29th day of March, 2023.

By: */s/ Rachel E. Kaufman*
Rachel E. Kaufman (Cal Bar No. 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Attorney for Plaintiff and the Proposed Classes*